IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHERI LEE WILKE,

        Plaintiff,

 v.                   OPINION and ORDER

NANCY BERRYHILL,             18-cv-549-jdp
 Acting Commissioner, Social Security Administration,

         Defendant.

---

  Plaintiff Cheri Lee Wilke seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, denying her application for disability benefits. The administrative law judge (ALJ) found that Wilke had several severe impairments, including fibromyalgia and multiple sclerosis, but he ultimately concluded that Wilke retained the residual functional capacity to perform light work, including her previous work as a medical assistant and appointment coordinator. So he deemed her not disabled and denied her claim for benefits.

  Wilke challenges three aspects of the ALJ's analysis on appeal. She contends that the ALJ erred by (1) improperly rejecting the opinion of Dr. Timothy Ablett, one of the physicians who evaluated Wilke; (2) improperly "playing doctor" by drawing independent medical conclusions from the evidence; and (3) failing to properly credit Wilke's subjective reports of pain. The case is scheduled for oral argument on March 14, 2019, but the court concludes that oral argument is unnecessary. The court concludes that Wilke has failed to identify any reversible error and that the ALJ's decision applies the proper standards and is supported by substantial evidence. The court will deny Wilke's motion for summary judgment and affirm the commissioner's decision.

BACKGROUND

Wilke applied for social security benefits on March 18, 2014. Her claim was denied both initially and upon reconsideration, so she filed a written request for a hearing, which was held before ALJ Michael Hellman on March 30, 2017. The ALJ found that Wilke suffered from the following severe impairments: fibromyalgia; multiple sclerosis; Crohn's disease in remission; lumbar degenerative disc charges; and scoliosis. He nonetheless determined that Wilke had the ability to perform a full range of light exertional work, and that she was capable of performing her past relevant work as a medical assistant and appointment coordinator. R. 20, 29.[1]

The issues Wilke presses on appeal primarily relate to the ALJ's handling of a medical opinion provided by Dr. Timothy Ablett, an occupational medicine specialist who examined Wilke on January 8, 2014. Ablett was not Wilke's treating physician, but he examined Wilke and completed a work capability assessment at the request of her treating physician. In his notes from that exam, he observed that Wilke appeared "comfortable and alert" and was "able to change position from sitting to standing to walking but in a somewhat uncomfortable and antalgic manner." R. 351. Although she had some abdominal tenderness, low back discomfort when bending over, and was "very unstable when squatting to the floor and coming back into a standing position," she had good grip strength and normal bilateral bicep strength. *Id.* Ablett relied on these findings along with Wilke's primary care provider's treatment notes to complete a "work capability assessment." He limited her to very light work; lifting no more than five pounds; never bending, squatting, twisting, or climbing; and working for no more than four

---

[1] Record cites are to the administrative transcript, located at Dkt. 6.

hours per day. R. 1075. He deemed these "permanent restrictions [that] preclude Ms Wilke from finding gainful employment at this time." R. 1074.

The ALJ accorded little weight to Ablett's opinion, citing several reasons. R. 28. He noted that Ablett was not Wilke's treating physician, that he only saw her once, and that Ablett had stated that his opinion was based in part on a third-party source (i.e., Wilke's "primary care provider's recent indication of her inability to work." R. 1094). Ablett also stated that he based his findings in part on Wilke's use of sedating medications, but the ALJ noted that nothing in the record suggested that Wilke ever experienced deficits of alertness and orientation.

The ALJ also explained that Ablett's opinion was inconsistent with other evidence in the record, including evidence that Ablett himself provided. Ablett's exam notes state that Wilke "appeared comfortable alert" during the exam and "was able to change position from sitting to standing to walking," which the ALJ deemed inconsistent with the extensive physical limitations Ablett listed in his opinion. R. 28. The ALJ also observed that treatment records from Wilke's care providers indicated that she was busy and active, and that Wilke herself testified that she tries to remain physically active and that her medications are effective at relieving her pain and help her to move around. He further noted that Ablett's limitation of Wilke to lifting no more than five pounds was inconsistent with Wilke's testimony that she was able to lift her twenty-pound daughter.

The ALJ also deemed Ablett's opinion inconsistent with the opinions offered by two non-examining state agency medical consultants, Drs. Mina Khorshidi and Wallace Wells. Khorshidi and Wells opined that Wilke could perform light work with no postural, environmental, visual, communicative, or environmental limitations. *See* R. 80–84, 98–102.

3

The ALJ gave these opinions great weight, *see* R. 29, a decision that Wilke does not challenge on appeal. Both Khorshidi and Wells analyzed Ablett's opinion, and both discounted it as overly reliant on subjective symptom reports and unsupported by the totality of the evidence. *See* R. 81, 83, 98–99, 100–01.

Wilke contends that the ALJ committed several errors in analyzing Ablett's opinion. The court turns to those alleged errors now.

## ANALYSIS

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts, weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Id.* When it comes to the weighing of treating source opinions, courts will typically "uphold all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citations and internal quotation marks omitted).

Wilke contends that the ALJ erred by (1) failing to comply with the regulations governing an ALJ's consideration of medical source opinions, 20 C.F.R. § 404.1527; (2) substituting his own judgment for Ablett's without relying on other medical evidence in the record; and (3) discounting Wilke's subjective pain symptoms.

## A. Evaluation of Ablett's opinion

In her opening brief, Wilke contends that the ALJ erred by failing to apply the treating-physician rule, which provides that a treating source opinion should receive "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).[2] But Ablett was not Wilke's treating physician. To qualify as a treating physician, the medical evidence must establish that the claimant has seen the source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for the medical condition at issue. 20 C.F.R. § 404.1527(a)(2). The regulations explain that a provider is not considered a treating source if the claimant is seeing that provider solely "to obtain a report in support of [her] claim for disability. In such a case, [the agency] will consider the acceptable medical source to be a nontreating source." *Id.* Here, Wilke saw Ablett only once, and it was for the express purpose of completing a work capability assessment. R. 1098 ("I saw Ms. Wilke on a single occasion, January 8, 2014, for a work capability assessment. I am not Ms Wilke's treating provider.").

In her reply brief, Wilke implicitly concedes that Ablett was not a treating source and instead argues that his opinion should have commanded more weight because he was an examining source. *See* Dkt. 15, at 1, 15 ("Dr. Ablett, while not providing direct treatment, was on staff at Marshfield Clinic, the facility in which Wilke received her treatment. . . . Accordingly, Wilke established that Dr. Ablett was an examining source with expertise in assessing work-limitations."). The regulations give presumptively greater weight to the opinions

---

[2] 20 C.F.R. § 404.1527 has since been replaced by a new regulation, § 404.1520c, but § 404.1527 applies to Wilke's claim because it was filed before March 27, 2017.

of examining sources than to non-examining sources. 20 C.F.R. § 404.1527(c)(1). But an ALJ may discount an examining source opinion if he provides reasons supported by substantial evidence. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Typically, ALJs explain their weight decisions by reference to the regulatory factors set out in § 404.1527(c)(2), which instructs the ALJ to consider the length, nature, and extent of the treatment relationship; the supportability of the medical opinion and its consistency with the record as a whole; whether the medical source has a relevant specialty; and any other relevant factors. Wilke says that the ALJ did not address those factors in his decision.

But the ALJ did address the § 404.1527(c)(2) factors. The only factor that supported giving deference to Ablett's opinion was that Ablett specialized in occupational medicine (which the ALJ noted, *see* R. 28). The remaining factors militated against according significant weight to Ablett's opinion. The ALJ observed that Ablett saw Wilke only once and never treated her; Ablett stated that he based his conclusions on another doctor's findings, which undercut the supportability of his opinion; and the extensive functional limitations asserted in his opinion were inconsistent with both the record as a whole and the recorded findings from his own examination. *Id.*

A review of the record bears out the ALJ's conclusions. Ablett opined that Wilke could never bend, twist, or climb stairs, but notes from Wilke's treating providers indicate that Wilke was able to do yoga and stretching exercises that were helpful in relieving pain. R. 1483, 1639. Ablett opined that Wilke could lift a maximum of five pounds, but Wilke testified that she could lift her twenty-pound daughter, and estimated that she could probably lift ten pounds repetitively for up to a third of the day. R. 62. The court discerns no error in the ALJ's decision to accord Ablett's opinion little weight, or in his analysis of the § 404.1527(c)(2) factors.

6

B. "Playing doctor"

Wilke contends that the ALJ improperly "played doctor" by drawing his own conclusions from the medical evidence. Specifically, she says that the ALJ, as a layperson, was not qualified to interpret Ablett's examination results (e.g., his assessment of Wilke's bicep strength; the impact of her unsteadiness while squatting; etc., *see* R. 351) and deem them inconsistent with Ablett's medical opinion. She contends that the ALJ improperly substituted his own judgment for a physician's "without relying on other medical evidence in the record," as "there was no contrary evidence to Dr. Ablett's opinion upon which the ALJ could have relied." Dkt. 15, at 15.

This argument fails. As already discussed, there *was* evidence in the record that contradicted Ablett's extensive limitation findings, both in the treatment notes of Wilke's physicians and in the testimony of Wilke herself. Also, the ALJ did not rely exclusively on his own assessment of the record. He relied on expert opinion evidence from Drs. Khorshidi and Wells, *see* R. 28–29, both of whom considered Ablett's opinion and found the degree of limitation he asserted to be inconsistent with the totality of the evidence.[3] *See* R. 81, 83, 98–99, 100–01.

Even if the ALJ hadn't relied on the agency consultant opinions, it does not take a medical degree to identify the obvious difference between the indeterminate findings from

---

[3] Wilke contends that these findings regarding Ablett's opinion were actually made by the non-physician "disability adjudicator/examiners" whose signatures appear at the bottom of the disability determination explanations, *see* R. 84, 102, and not by the medical experts themselves. Dkt. 15, at 20. But the records clearly indicate that the analyses of Ablett's opinion were provided by Khorshidi and Wells, whose signatures directly follow the explanations. *See* R. 81–82 (explanation signed by Khorshidi); R. 98–100 (explanation signed by Wells). Wilke cites no evidence to substantiate her contention that these findings were actually made by the non-physician disability adjudicators.

7

Ablett's physical exam and the decisive limitations asserted in his opinion. *Compare* R. 351 ("She is able to change position from sitting to standing to walking but in a somewhat uncomfortable and antalgic manner. . . . She is able to flex at the waist to bring her fingertips 12 inches from the floor and this does evoke some low back discomfort.") *with* R. 1074 (opining that Wilke's "permanent restrictions" "preclude [her] from finding gainful employment at this time"). Acknowledging this obvious contrast is not the armchair medical diagnosis that the court of appeals has repeatedly warned against. *See, e.g.*, *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("[T]he ALJ did not err or improperly 'play doctor' by examining the medical record and determining that [treating source's] conclusions were unsupported by his own notes or contradicted by other medical evidence."). Evaluating the supportability of Ablett's opinion was part of the ALJ's mandate. 20 C.F.R. § 404.1527(c)(3). The ALJ did not play doctor by simply doing what the regulations instruct.

**C. Discounting Ablett's consideration of Wilke's pain symptoms**

Wilke's final contention is that the ALJ "improperly disregarded Wilke's subjective reports of pain and failed to properly evaluate Dr. Ablett's consideration of that condition when making his assessment." Dkt. 10, at 27. Although Wilke does not frame this argument as a challenge to the ALJ's credibility determination, that is essentially what it is. Wilke says that the ALJ did not properly analyze her statements of disabling pain in deciding whether she was disabled. She does not identify any specific subjective reports of pain that the ALJ failed to credit. Instead, she focuses her argument on the ALJ's alleged failure to employ the proper framework in analyzing Wilke's statements about the intensity, persistence, and limiting effects of her pain symptoms.

8

Wilke offers two arguments in support of her contention that the ALJ erred in his assessment of her subjective reports of pain. First, she says that the ALJ "systematically made findings which pointed to the lack of objective evidence, and based [his] decision on that lack of objective criteria." Dkt. 10, at 25. That is simply not true. The ALJ discussed Wilke's pain symptoms at length, and noted that "[t]he record does support complaints of pain all over her body." R. 19. His reasoning shows that he did not fully credit Wilke's assertions that her pain was disabling, not because her symptoms could not be substantiated by objective evidence, but because they were actually contradicted by other evidence in the record.

For instance, the ALJ noted that, although Wilke alleged that her movement and activity levels were significantly inhibited by her pain, the treatment notes from her various physicians noted that she was "active, busy and doing different activities." R. 24. He noted that her pain-related treatment had been generally conservative and consisted mostly of medications, which Wilke testified offered some relief. He also noted Wilke's testimony that when her pain got really bad, "she would see her gynecologist who does manipulation," but that "[d]espite her significant functional allegations, she acknowledged that she only sees him three or four times a year. Otherwise, she does not use any other treatment modalities." R. 27. These and other inconsistencies are what drove the ALJ's reasoning, not the lack of substantiating objective evidence.

Wilke's second argument relates to the ALJ's analysis of Wilke's fibromyalgia. Wilke contends that the ALJ failed to employ the Social Security Administration's interpretive ruling requiring ALJs adjudicating fibromyalgia-related disability claims to consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of

9

the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Wilke says that the ALJ "did not consider the evidence," "undertake [a credibility] assessment," or "consider the regulatory factors." Dkt. 10, at 27. That is also not true. The ALJ discussed all of the regulatory factors, including Wilke's daily activities (R. 23, 25–26); her medications (R. 20–28); her treatment and attempts to obtain treatment (R. 21–26); and statements others made about her symptoms (R. 27–29). In light of the weight of that evidence, the ALJ determined that Wilke's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." R. 25. So the ALJ fully complied with the Social Security Administration's methodology for analyzing fibromyalgia-related claims.

Wilke has failed to show that the ALJ committed any reversible errors. The court will deny her motion for summary judgment and affirm the commissioner's decision.

ORDER

IT IS ORDERED that Cheri Lee Wilke's motion for summary judgment, Dkt. 9, is DENIED and the administrative decision is AFFIRMED. The March 14, 2019 oral argument is CANCELED as unnecessary. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered March 13, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge